## CARR v. HANCKEL.

1. An estate was devised and bequeathed to trustees for the use of A (the sole heir of testatrix) for life, and then to her children and to other issue, and failing these to B in fee. A claimed from the trustees the whole estate in fee, but it was adjudged that she had only a life estate, and was not entitled to the reversion, as that would go to such person as would be the heir of testatrix when the particular estate failed. This decree also held that the limitation to B was void for remoteness. In action brought after A's death by parties claiming under B to recover this estate from A's devisees—*held*, that the privies of A could not claim an interest in this property after her death, as the matter

was *res judicata.* Whether B and her privies were bound by the ruling that the remainder to B was void, not decided.

2. After A's death, B's heir accepted from one of A's legatees an assignment of her interest as legatee in this estate. In action by B's heir against the trustee and the other legatee to recover this legatee's moiety—*held,* that B's heir was not thereby estopped from disputing the right of A to dispose of any portion of this estate.

3. But at the time that B's heir received from the trustee the moiety purchased by her, she released and assigned to the legatees of A all her interest and right under the will of first testatrix, B's heir then having full knowledge of all these matters, and no imposition or fraud having been practised upon her. Afterwards B's heir purchased the rights of the person who was sole heir of first testatrix after the death of A unmarried. *Held,* that this release and assignment under seal bound B's heir as to any right she may have had under the first will, and also as to any right subsequently acquired from this reversioner.

Before HUDSON, J., Charleston, April, 1887.

The appeal in this case was from the following decree :

It is very clear that whatever was decided by Chancellor David Johnson at Georgetown in the suit between Emma S. Smith and the executors and devisees of the will of Sarah Waring, is binding upon the parties to that suit, and upon those claiming under them, since there was no appeal. None of the parties to that suit, or their privies, will now be admitted to gainsay the correctness of Chancellor Johnson's interpretation of the will of Sarah Waring.

But great difference of opinion now prevails, and seems to have prevailed ever since the decree, as to what was adjudged, or rather as to the full extent of the points decided. Mr. Petigru was of the opinion that the decree was erroneous in its conclusions as to the estate taken by Emma S. Smith under the will.[1] The chancellor held that Emma took only a life estate, and no more, and upon her death, without children, the property reverted to the estate of the testatrix and became distributable to

[1] Copy of Mr. Petigru's memorandum endorsed on the decree in pencil : "This decree is wrong in the position that Mrs. Waring's estate will go to the persons that will be her next of kin after Sarah's death. Sarah has a life estate and a contingent interest in case she leaves no children. She can dispose of the whole estate, subject to the proviso that if she leaves children, they will take, as purchasers, an estate for life."

those who were the next of kin to the testatrix at *the death* of *Emma*, Mr. Petigru contending that in that event a case of intestacy in Sarah Waring arose, and that distribution must be made to those who were next of kin to Mrs. Waring at the time of *her death*, and that Emma, being sole heir at the date of Mrs. Waring's death, could by will or deed dispose of her contingent interest or reversionary interest, which interests would depend upon the fact whether she had or had not children.

Again, supposing Mr. Petigru to have correctly interpreted the chancellor's meaning, then Mrs. Gaillard was, at Emma's death, next of kin to Mrs. Waring, and became entitled to the estate. Again, if it be a fact that Chancellor Johnson did not pronounce the limitations over to Mary Allston Carr void, and if it be in fact a good limitation, then the property should go in accordance with that limitation, unless prevented by act of the parties. Just here, however, opinion is again divided, and is still in conflict; it being contended that the limitation is void, and was so held by the chancellor, and, on the other hand, it is contended that the limitation is good, and was not pronounced void by the chancellor, and was not, in fact, passed upon by him, not having been put in issue.

At all events, it is contended that the present plaintiff is not bound by anything upon that subject in said decree contained. From this hasty statement it is apparent that great contrariety of opinion touching the construction of the will of Sarah Waring has existed ever since it was admitted to probate, and that controversy did not cease with the decree of 1845, but has continued between the different claimants ever since, until it is once more in the courts for adjudication. The adverse claimants have all along had full knowledge of all the facts, or at least have had free access to the means of full knowledge. All the contestants have had the benefit of the very best legal advice in every step of the controversy from 1845 to the present time. Not one of them has done an act or taken a step in ignorance of fact, ignorance of law, or a mistake of any plain principle of law, but each has acted with full knowledge of the facts and under advice of able counsel.

Emma S. Smith so acted in the suit of 1845 in Georgetown,

and again when, in 1870, she undertook to dispose of this property by will. The present plaintiff so acted when, in 1879, she accepted from Sarah L. Lance a deed for the share of said S. L. Lance under the will of Emma S. Smith, and thus recognized the right of Emma S. Smith to make said will. She again acted knowingly and advisedly when, on March 29, 1880, she released to Sarah L. Lance and Eugenia W. Smith all her interest which she then had, or may ever have had, under the will of Sarah Waring. She was equally well informed and advised when, on August 11, 1880, she settled with Thomas M. Hanckel, trustee, and received her half of the estate of Sarah Waring, derived by her from S. L. Lance, and knew that the other half was to be paid to Eugenia W. Smith.

This was a clear and distinct acknowledgment of the validity of the will of Emma S. Smith, and an acceptance of its provisions, she standing in the shoes of Sarah L. Lance, her assignor. And it was also a clear and distinct release to the said Sarah L. Lance of all possible claim of any interest under the will of Sarah Waring. In other words, Sarah E. Carr distinctly repudiated all pretence of claim under the will of Sarah Waring, and distinctly admitted the right of Emma S. Smith to dispose of this property. All this she did in the full light of all the facts, and under the advice of able counsel. In this transaction I can see nothing but the settlement of a disputed and doubtful question of legal right; and, so far as I can see, the settlement was decidedly to the advantage of Sarah E. Carr, because her claim rested solely upon the supposition that the limitation over to Mary Allston Carr in the will of Sarah Waring was a good one.

So far, however, as I can construe the decree of Chancellor David Johnson, I hold that he decided that limitation void when he held that every limitation in said will was void, except that to the children of Emma S. Smith, should she have any. His decree seems clear to me on this point, and, so far as I can see, pointedly excludes Mary Allston Carr. Mr. Lesesne must have thought so, or must at least have thought the claim of his client doubtful when he advised her to accept a settlement under the will of Emma S. Smith. That settlement having been made with Thomas M. Hanckel, as I think, by way of compromise of

a doubtful right, and to the manifest advantage of Sarah E. Carr, as matters then stood, she will not be relieved against it now by this court, and the only authority I will cite in support of this view is *Keitt* v. *Andrews* (4 *Rich. Eq.*, 349–355), which is not in conflict with authorities cited by the plaintiff's counsel. In fact, I do not regard the plaintiff as having made a mistake, either of law or of fact, in that settlement, but think she was really fortunate. If, however, it was a mistake, it is not one of a character to justify the court in relieving her of it.

In the year following this settlement, the plaintiff received from S. T. Gaillard a deed purporting to convey to her all the property devised and bequeathed to Emma S. Smith in the will of Sarah Waring. This property he claimed to have received by the will of his wife, who was the next of kin to Sarah Waring after the death of said Emma. But this title cannot inure to the benefit of the plaintiff against the defendants, because she had already disclaimed all benefits under the will of Sarah Waring, and had, with her eyes open, settled with the trustee under the will of Emma S. Smith, and ratified the title of the latter testatrix. This last title must, therefore, inure to the benefit of the defendants, and not the plaintiff, under this well established doctrine, that if one having no title, or an imperfect title, to property convey it to another under an honest belief that he has a good title, any title which he afterwards acquires will inure to the benefit of his former grantee. So that the deed of Mr. Gaillard, if really a good title, would go to the benefit of Sarah L. Lance, *i. e.*, to the present defendants for the purposes of this suit.

But again, as between the present defendants and Mrs. Gaillard, the question of the construction of the will of Sarah Waring is *res integra*, and not *res adjudicata*. Very strong authority, if not the weight of authority, favors this view taken by Mr. Petigru, Mr. Lesesne, and Mr. Hanckel, the trustee, viz., that if a case of intestacy in Mrs. Waring as to this property occurred after the failure of all remainders, and the property reverted to the estate of the said testatrix, we must look to the period of the death of the testatrix to ascertain her next of kin. If that be the period fixing the succession, then Emma S. Smith became

vested with the right, and her will carried the property to the persons named therein.

Clearly this view must have had controlling influence upon all the parties and their lawyers, and was adopted and carried out by the present plaintiff. Mrs. Gaillard made no claim to this property, and makes no mention of it in her will. It was not until 1881, after the whole matter had been settled, that the present plaintiff obtained a conveyance from S. T. Gaillard of this estate. Whether he or she conceived the idea does not appear. The thought, however, came too late to benefit the plaintiff, because she had already disposed of all her claim to property under the will of Sarah Waring, and had united with Eugenia W. Smith in settling with Mr. Hanckel as to this very property as the estate of Emma S. Smith. The master, therefore, is, in my judgment, in error in holding that the limitation to Mary Allston Carr in the will of Sarah Waring is not *res adjudicata*, so far as the plaintiff is concerned, and is a good limitation; and in holding that the present plaintiff is not estopped by her deed to Sarah L. Lance and her settlement with the trustee. Mr. Hanckel.

It is therefore ordered, adjudged, and decreed, that the conclusion of law by the master be overruled, and the exceptions thereto be sustained to the extent set forth in this opinion. It is further ordered and adjudged, that the plaintiff is not entitled to take under the will of Sarah Waring, either as next of kin to Mary Allston Carr or· as grantee of Sextus T. Gaillard, but is entitled to share with Eugenia W. Smith one-half of the property still in the hands of Thomas M. Hanckel, trustee, being what remained after his settlement in 1880 with her and Eugenia W. Smith.

For the purpose of ascertaining this balance, the complaint will be retained with leave to have a reference if it be desired; but since the plaintiff's right to this settlement has never been denied, she must pay the costs of this litigation, and it is so ordered.

The exceptions, nineteen in number, quoting the language of the decree, alleged errors in all of its findings.

*Mr. T. G. Barker*, for appellant.

*Messrs. Hayne & Ficken,* contra.

March 28, 1888.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   Mrs. Sarah Waring, late of Georgetown, S. C., died about May 6, 1838, leaving her whole estate real and personal to certain trustees, in trust for her granddaughter, Emma S. Smith, for life, and "immediately after her death in trust for the sole and separate benefit and behoof of any child or children of her (my said granddaughter) who may survive her, and during the term of his, her, or their natural life respectively, to have, take, and receive the income of my estate, both real and personal.   And from and immediately after the death of the said child or children of my said granddaughter, then in trust to and for the sole and separate benefit and behoof of such issue of the said child or children of my granddaughter as shall attain the age of twenty-one, if males, or eighteen, if females, freed and discharged of all further trusts to him, her, or them, his, her, or their heirs forever, share and share alike," &c., &c.   And further, "should my granddaughter die without leaving issue, or if she has issue, and that issue should die without leaving issue, or if there be issue thereof, and that issue die before he or she or they attain the age of twenty-one, if males, and eighteen, if females, so that the trust estate created above should terminate before it becomes absolutely vested, then in that event I will and bequeath all my estate both real and personal to my friend and relative, Mary Allston Carr, her and her heirs forever."   The trustees appointed by the will of Mrs. Waring having died, the defendant, Thomas Hanckel, was subsequently appointed, in the place of the late Hon. R. F. W. Allston, the survivor of those appointed under said will.

During the life-time of Emma S. Smith, since deceased (the granddaughter above), she laid claim to the absolute estate in fee of the entire property devised and bequeathed as above by Mrs. Waring, and in 1845 a suit was instituted by her in the Court of Equity against the executors and trustees aforesaid, and Mary A. Carr, to establish her rights as claimed therein.   This case was heard by Chancellor David Johnson, who decreed as follows: "The prayer of the bill that the complainant should have im-

22

mediate possession and use of the estates is founded on the assumption that, under the dispositions of the will, all the limitations over are void and that she is entitled to an absolute estate in them.    It is not denied that the limitations over to her children standing alone would be good, but that the limitation over to the grandchildren of her granddaughter is void, and it is insisted that being void, all the limitations fail.   2 *H. Bl.*, 362, 2 *Br. P. C.*, 453, and 1 *Ves.*, 124, have been referred to in support of this position, and I assume for the present that the limitation over to grandchildren is void.   On examination of these cases, it will be found, that the rule laid down is not that a prior good limitation is void because it is followed by one that is bad, but that a good limitation over after one that is void can't take effect, for the obvious reason that the subsequent valid limitations are void because they are dependent on the preceding limitations that can't take effect.

"The rules in regard to limitations over as applicable to the case under consideration are too familiar to require illustration. The number of limitations over is immaterial; all, however, are void, which must not necessarily (not probably) take effect within lives in being and twenty-one years, and the ordinary period of gestation thereafter.   2 *Fearne Rem.*, 20 ; 2 *T. R.*, 100.   According to this rule, the limitation over to such children as the complainant might have who survived her is good because that must take effect immediately on her death, but not so with regard to the limitation over to their children, for they, the children on whose life this limitation depends, are not in being, and the event of their death, which may or may not, but (will) not necessarily happen in the life-time of the complainant and the ordinary period thereafter.   It is, therefore, void.

"The estate is given to the complainant for life only, and after her death to her children for life only, and they can take no more. All the subsequent limitations are void, and upon complainant's death without issue it reverts.   If she have children, they are entitled to take for life ; but upon their death, whether they have issue or not, it reverts to the right heirs of the testatrix.   And at the hearing the question whether the complainant was not entitled to the possession of the estate, being now the nearest of

kin and heir, and entitled to the reversion, suggested itself to my mind. But there is nothing in it. It is the mere possibility of a reversion and not an estate. *Adams* v. *Chaplin*, 1 *Hill Ch.*, 277–8. Those who are in being at the time the reversion happens, and who stand in the relation of heirs to the testatrix, will be entitled to the estate. The complainant never can, because the estate cannot revert until after her death, nor can her children for the same reason. Her grandchildren may, if there be any heirs, lineal descendants of the testatrix; they would be entitled to take in exclusion of collaterals.

"As the tenant for life, the complainant is entitled to an account of the estate to ascertain of what it consists, in what manner the funds are secured, and how its affairs have been conducted, and an order for such account has already been made."

From this decree there was no appeal. Some time after this decree, Emma S. Smith departed this life, to wit, in 1879, leaving a will in which she devised and bequeathed the property above mentioned to her aunt, Sarah Laura Lance, and to Eugenia W. Smith, one moiety to each. At the death of Emma S. Smith, the life tenant, Sarah B. Gaillard, wife of Sextus T. Gaillard, was the sole heir of the testatrix, Mrs. Waring. Sarah Gaillard died in 1881, leaving of force a will in which she gave all of her estate to her husband, who in December, 1881, by deed conveyed and assigned to the plaintiff, Sarah E. Carr, all the share, interest, and estate to which his said wife became entitled under the will of Mrs. Waring, and to which he became entitled by the will of his wife. Before the death of Mrs. Gaillard, in 1879, Mrs. Sarah Laura Lance had by deed conveyed to the plaintiff, Sarah E. Carr, all her right and title to the stock, bonds, and all other property belonging to the trust estate created by the will of Mrs. Waring now (then) in the hands of Thomas M. Hanckel, trustee, as had been bequeathed and given to her by the will of her niece, Emma S. Smith, deceased.

On March 11, 1880, Thomas M. Hanckel, trustee, exhibited a statement of certain securities forming a part of the trust estate of Mrs. Waring in his hands, one-half of which he transferred to the plaintiff by the direction of Mrs. Lance. On March 29, 1880, the plaintiff, Sarah E. Carr, executed a release under seal

to Thomas M. Hanckel, reciting that it was for a valuable consideration, and releasing to Sarah Laura Lance and Eugenia W. Smith, all her right, &c., whether in law or equity, which she then had, or may have ever had, in the estate of the late Mrs. Waring under her will; and authorized Thomas M. Hanckel, trustee, to pay over the trust funds in his hands to the said Mrs. Lance and Eugenia W. Smith, in pursuance of the direction of the will of Emma S. Smith, deceased. Sarah E. Carr, the plaintiff, is the daughter and sole heir of Mary Allston Carr, deceased, to whom Mrs. Waring, testatrix, devised the estate in the event that the trust estate created by her terminated before it became absolutely vested.

Under the above state of facts, the action below was instituted by the plaintiff, Sarah E. Carr, in which she claims the property in question, as daughter and sole heir of Mary Allston Carr. As grantee and assignee of Mrs. Sarah B. Gaillard, through her husband, Sextus T. Gaillard, and as assignee of Mrs. Sarah L. Lance, she claims whatever interest either of these parties may have had in said property. Mr. Hanckel, the trustee, answered, alleging that he had accounted to the plaintiff for the moiety or half part of the trust estate assigned to her by Mrs. Lance, with the exception of certain stock of the State of South Carolina for $200, a mortgage of Alfred Trenholm for $500, and thirty-six shares of old unconsolidated stock of the Bank of Charleston, and he submitted that he was not bound to account to plaintiff until she had established her right to a further accounting. Eugenia W. Smith answered, denying that plaintiff had any interest in the estate except such as she may have obtained by the assignment and release to her by Mrs. Sarah L. Lance, of the moiety bequeathed to her by Emma S. Smith.

The case was referred to master Sass, who found the facts, substantially, as stated above. And as matters of law, he found: 1st. That the question of the proper construction of the will of Mrs. Sarah Waring was not *res adjudicata*, as to the parties to this suit, by the decree of Chancellor Johnson in *Smith* v. *Waterman*. 2nd. That the devise to Mary Allston Carr in said will was not void for remoteness, &c., but that it was a valid contingent remainder. 3rd. That the plaintiff, as the daughter and sole

heir of Mary Allston Carr, was at the death of Emma S. Smith, entitled to the whole estate, and that she was not estopped by her settlement with Hanckel, the trustee, the same having been made under a mistake in law, from which equity would relieve.

The case then came before his honor, Judge Hudson, upon the report of the master, with exceptions, who overruled the conclusions of law of the master, and adjudged that the plaintiff was not entitled to take under the will of Sarah Waring, either as next of kin to Mary Allston Carr, or as grantee of Sextus T. Gaillard, but was entitled to share with Eugenia W. Smith one half of the property still in the hands of Thomas M. Hanckel, trustee, being what remained after settlement in 1880 with her and Eugenia W. Smith, with leave to have a reference if desired to ascertain this balance, ordering the plaintiff to pay the costs, because her right to said settlement had not been denied her. His honor's decree was based principally upon the fact, that whatever might have been the real interest of the plaintiff, whether she derived it through the assignment of Sextus T. Gaillard or as heir at law of her mother, Mrs. Mary Allston Carr, the plaintiff was estopped from claiming said interests by her acceptance of the assignment of Mrs. Lance of one moiety of the estate, which she, Mrs. Lance, obtained through the will of Emma S. Smith, his honor holding that this acceptance was a recognition of the title of the said Emma S. Smith as against her own title. And further, his honor held that the settlement made by Hanckel, the trustee, with the plaintiff in 1880, and the release of the plaintiff then made of all of her interest under the will of Mrs. Waring to Mrs. Lance and Eugenia W. Smith, was the compromise of a doubtful right, and therefore conclusive upon the plaintiff; and that her right to the property, as heir of Mrs. Mary Allston Carr, or as grantee of Sextus T. Gaillard, only went to the benefit and advantage of her assignees, Mrs. Lance and Eugenia W. Smith.

The correctness of this adjudication is now before us upon appeal of plaintiff. The first, and perhaps the most important, question is the effect of the decree of Chancellor David Johnson in 1845, in the case of Waterman and Smith, upon the rights and interests of the parties now before the court. It will be con-

ceded, we suppose that this decree, whether right or wrong in the principles of law there laid down and applied to the parties then before the court, yet, there being no appeal therefrom, was the law of that case, as to the rights of the parties adjudicated, and of their privies, in so far, at least, as the announcement of any principle of law then made was necessary to the questions at issue between said parties. Such being the fact, it becomes wholly unnecessary now to examine into the correctness of the learned chancellor's ruling in said case. We are only concerned with the question, what did he rule?

Upon this question there does not seem to be any doubt as to rights of Emma S. Smith under the will of Mrs. Sarah Waring. The decree is very clear in its adjudication, first that Emma S. Smith took only a life estate under said will; and, second, that she could not take the reversion as heir at law of Mrs. Waring. So holding, the judgment of the court was that Emma S. Smith, while entitled as life tenant to an accounting for the purpose of ascertaining of what the estate consisted, &c., was not entitled to the estate in fee, as she claimed. In the opinion, the distinguished chancellor also held incidentally, that the limitation to Mrs. Mary Allston Carr, in the event that the estate never vested in those mentioned in the will to take after the life estate of Emma S. Smith, was void, and also that the heir at law in being at the termination of the life estate of Emma S. Smith would take the reversion. Emma S. Smith and Mary Allston Carr were both parties to that proceeding, and whatever may be the case as to Mary Allston Carr and her privies, there can be no doubt that Emma S. Smith and her privies were conclusively bound by the judgment pronounced, the said proceeding having been instituted by the said Emma S. Smith to settle and determine her rights under the will of Mrs. Waring, and there being no appeal therefrom. So that it must be concluded that the will of Emma S. Smith subsequently made to the extent of attempting to bequeath and devise the estate of Mrs. Waring to Mrs. Lance and Eugenia W. Smith, one moiety to each, was a nullity.

There is some doubt as to the effect of this decree on the rights of Mrs. Mary Allston Carr and her privies. She was a party defendant to the case, it is true, made so by Emma S. Smith,

because, doubtless, Miss Smith knew that her claim was in conflict with the claim which Mrs. Mary Allston Carr might set up; but we do not see clearly, that the adjudication of the claim of Mrs. Mary Allston Carr was absolutely necessary to the adjudication of the rights of Emma S. Smith. But be that as it may, Emma S. Smith having been eliminated, the whole estate at her death went over either to Mary Allston Carr, or to Mrs. Gaillard, as sole heir of Mrs. Waring, the interests and rights of both of whom subsequently became vested in the plaintiff. The important question now is, has she forfeited this right, or rather has she parted with it, so as to preclude her present claim?

It is urged, first, that having accepted an assignment from Mrs. Lance of one moiety of the estate, bequeathed to Mrs. Lance by Emma S. Smith, that she thereby recognized the right of Emma S. Smith to deal with the estate, and that she is estopped now from contesting said right. We do not think that this acceptance amounts to such an estoppel. Mrs. Lance was not put in any worse condition thereby. She was not misled to her prejudice, nor were her rights in any way endangered. Even supposing that the plaintiff was fully cognizant of her own rights, there could be no reason why she should not have accepted the assignment of Mrs. Lance as to one-half of the estate. The transaction settled, at least to that extent, the opposing claims of Mrs. Lance and removed a possible litigant.

It is urged again, and this is the serious obstacle in the way of the plaintiff, that her settlement with Hanckel, the trustee, in 1880, and her release at the same time to Mrs. Lance and to Eugenia W. Smith of all the interest that she then had, or may have ever had under the will of Mrs. Waring, estops her. If she was entitled to the estate as heir at law of Mary Allston Carr at all, she was entitled to it at the time of this settlement, and if that release was a valid release, her assignment therein carried all of her interests. True, at that time she had not become the grantee of Sextus T. Gaillard, of the right and interests of his wife, as heir at law of Mrs. Waring at the death of Emma S. Smith. But she afterwards became such grantee, and under the familiar rule, her assignment to Mrs. Lance and Eugenia W. Smith made before would have become perfected, securing to said

parties the entire interest of the plaintiff, provided always that said assignment was not invalid for some other reason.

Now the vital question is, can we hold said assignment to be invalid? His honor held it valid as the result of a compromise of a doubtful right. The testimony as reported in the "Case" is very meagre, and while we are not prepared to say positively that said testimony fully sustains his honor's conclusion, yet aside from that, what is there in the case that would warrant this court in this appeal to hold that said assignment was void? It is under seal, and seems to have been deliberately executed. There is no charge in the pleading of fraud, undue advantage, imposition, mistake, either of fact or of law. No direct effort has been made to annul it. The attack upon it here has been collateral, and made in the argument of counsel more than elsewhere. The only direct evidence about it in the case is what Mr. Lesesne said, to wit, that he was the attorney of the plaintiff, and he advised her to accept the settlement proposed, and that Mr. Hanckel wrote the release, which plaintiff signed under his advice.

Parties have the right to assign their interests in any matter, if they are *sui juris*, and are not imposed upon, and are acting with knowledge, and free from such mistake as may give rise to equitable relief. And when they make an assignment, it is presumed to be valid until it is assailed for sufficient cause, and the grounds of attack sustained by testimony. We have nothing before us in reference to this assignment and release, except that it was executed, and that it was so executed under the advice of plaintiff's attorney, and that it was prepared by Mr. Hanckel, after an exhibition of the assets in his hands as trustee. Now, whether it was intended as a compromise of a doubtful right or not, as held by his honor, makes no difference; because, even if his honor was mistaken, there are no facts in the case which would then defeat it. In the absence of all testimony, we cannot assume that the plaintiff was acting either under a mistake of fact or of law, or that any other cause sufficient to invalidate said release was present, influencing and controlling her.

Such being the result of our examination of the case, we conclude that the plaintiff must content herself here with the moiety of the estate adjudged to her in the Circuit decree; and as there

is a portion thereof yet behind, for the ascertainment of which the judgment below provided, to the end of said ascertainment, and the relief necessarily incident thereto,

It is the judgment of this court, that the judgment of the Circuit Court, retaining the complaint, and giving leave for the reference suggested, be affirmed.