## 10317

### WREN *ET AL.* v. McCAY *ET AL.*
#### (102 S. E. 9.)

Wills—Devise to Whichever Child Supports Idiot Son Held to Go to
Particular Son's Estate.—Under a will devising certain plantations
and interest for the support of testator's idiot son for his life, with
remainder over "to whichever of my children shall take kind care of
my said son * * * and provide for him until his decease," where
another son of testator, assisted by the widow, took care of the idiot
son for 13 years, or until his death, and then turned over the charge
to his wife and daughter, who took care of the idiot son for 9 more
years, until he became dangerous and was committed to a hospital,
where he died in a few weeks, the estate of the son who took care of
the idiot is entitled to the entire remainder.

Before Townsend, J., Berkeley, Spring term, 1918.
Reversed.

Action by Ella G. Wren and others against Margaret R.
McCay and others. From judgment for plaintiffs, defend-
ants appeal.

*Messrs. L. D. Jennings* and *A. S. Harby,* for appellants,
cite: *As to estoppel:* 10 R. C. L. 689; 12 S. C. 314; 22 S.
C. 123 (2 Phill.) ; 141 Iowa 285; 119 N. W. 702; 133 A. S.
R. 170; Cooley on Torts (2d Ed.), latter part sec. 569; 41
Conn. 197; 30 Iowa 423; 36 Iowa 125; 14 Am. Rep. 505;
81 S. C. 329; 95 S. C. 328. *As to the rule in the exception
of wills:* 31 U. S. 68; 8 Law Ed. 322; 28 U. S. 346; 7 Law
Ed. 701; 26 S. C. 564; 28 S. C. 325; 1 Hill's Chan. 56 and
63 S. C. 474 (cited and differentiated from case at bar).
*As to the rule in determining whether there has been a per-
formance or breach of a condition precedent or of a con-
dition subsequent:* 40 Cyc. 1717; 37 Barb. 496; William on
Executors 1376; 19 S. C. 184; 1 Story Eq. 291; 9 S. C. 213;
27 L. R. A. (N. S.) 684 (footnote) ; 12 Ky. L. Rep. 827;
15 S. W. 511; 118 N. C. 422; — S. E. 751; 26 S. C. 471,
and 1 Hill 56, have no application to the case at bar.

*Messrs. Wolfe & Berry* and *E. J. Dennis,* for respondents,
cite: *As to what is a contingent remainder:* 10 S. C. 387;
10 S. C. 398. *This is not a vested remainder:* 10 S. C. 387.
*Not a fee defeasible:* 102 S. C. 243. *Courts favor a con-
struction rendering the estate a remainder instead of an
executory devise or limitation:* 24 A. & E. Encyc. L. (2d
Ed.) 429. *This is not an executory devise or limitation:*
16 S. C. 170; 2 Minor Inst. 369; Fearne on Remainders
385; 16 S. C. 325; 24 A. & E. Ency. L. (2d Ed.) 430; 24
A. & E. Ency. L. (2d Ed.) 428-9. *The contingent remain-
der here is not transmissible:* 26 S. C. 471. *By the terms
of the will none were or could be trusted with the "kind
care" of Lawrence, but a "child" of the testator:* 28 S. C.
326; 1 Hill Ch. (10 S. C. Eq.) 56; 17 Ill. (7 Peck) 59-61.
*Both conditions must be fully performed before the devisee
may take:* 50 S. C. 488; 28 S. C. 326; 2 Bl. Com. 157.
*This is a condition precedent:* 28 S. C. 331. *The devise is
void for uncertainty:* 28 S. C. 326; Jarman on Wills (5 Am.
Ed. 1880), pp. 661-2; 26 S. C. 470; 4 Kent Com. 125.
*Precedent conditions must be literally performed:* 4 Kent
Com. 125; 2 Bro. G. C. 431-460; Full Eng. Reprint 255;
16 Wall. (U. S.) 206; 33 N. J. L. 499; Underhill on Wills,
pp. 637-644; 16 Wall. (U. S.) 206; 26 S. C. 470; Jarman on
Wills (5 Am. Ed.) 520. *The condition to kindly take care
of Lawrence was to be personally performed by one of the
testator's children, and could not be performed by his heirs
or personal representatives:* 28 S. C. 326. *The contingent
interest of Thomas was not transmissible to his heirs or per-
sonal representative:* 26 S. C. 470. *The contingent remain-
der having failed, then the estate reverted to the estate of the
testator and passes under the residuary clause of his will:*
109 S. C. 439. *The increase of the residuary estate by acci-
dent is permissible under the rules of law:* 91 S. C. 103.
*In order to take under the devise, the taker must be a child
of the testator, and must have fulfilled the condition prece-
dent by taking kindly care of Lawrence until his decease:*

63 S. C. 474-490; Rich. Eq. Cas. 321-323; 19 S. C. 181.
*There could be no estoppel here:* 81 S. C. 331-2; 67 S. C.
449, *et seq.*

January 26, 1920.

The opinion of the Court was delivered by MR. JUSTICE
FRASER.

This is an action for partition and accounting. The
defendants-appellants set up title in themselves, and that
question alone is before the Court on this appeal, because,
if the appellants have title, there need be no accounting.

The question (only one need be considered) raised is
purely a question of law, and arises out of the following
provision of the will of C. G. McCay:

"I give, devise and bequeath my plantations in Saint James
Santee, known as the Manigault Tract and the Poplar Grove
Tract, and the interest on the sum of two thousand dollars
(which amount I hereby direct my executors, or such of
them as shall qualify, to raise out of my estate and to
securely invest), for the support and maintenance of my
son, Lawrence, for and during the term of his natural life;
and from and after his decease, I give and devise the said
tracts of land and the said capital sum of two thousand
dollars, in whatever invested, to whichever of my children
shall take kind care of my said son, Lawrence, and provide
for him until his decease."

We find this statement of facts in respondent's argument:

"C. G. McCay, the father, died in 1879. His wife,
Frances C., died in 1892.

"The two executors of the will, the two sons, Thomas A.
and Augustus William, died in 1905 and 1904, respectively.

"Lawrence, the imbecile son, died in 1914. From the
death of his father in 1879 Lawrence continued to reside
with his mother, Frances C., in the old home until she died in
1892; and, of course, she necessarily attended his personal
wants during that period. From the death of his father in

1879 until the death of the mother in 1892, Thomas A. took charge of and attended to the business affairs of Lawrence. When the mother died in 1892 Thomas A. took Lawrence to his house, and cared for him and his property until said Thomas A. died, in 1905.

"When said Thomas A. died in 1905, said Lawrence continued to live in the same house with Mrs. Margaret R. McCay and Mrs. Annie E. Andrews, the widow and daughter, respectively, of said Thomas A., who cared for him and took charge of his property interests until the 21st day of December, 1913, when they had him committed to the asylum as a pauper or beneficiary patient, where said Lawrence died in about six weeks, namely, on January 21, 1914.

"No child of the testator cared for Lawrence, save Thomas A., who died in 1905, 9 years prior to the death of Lawrence.

"Upon the death of Lawrence, the defendants, Margaret R. McCay and Annie E. Andrews, wife and daughter, respectively, of Thomas A. McCay, took possession of the property of Lawrence McCay, claiming it as owners thereof under the will of the testator, C. G. McCay.

"This suit now seeks the partition of this property among and between the four children of the testator, C. G. McCay, or their descendants, under the residuary clause of his will."

The record further contains statements that "Lawrence McCay had been an imbecile since birth, that he was a mute, and that he could understand a little, but had to be helped in every way, and could not dress himself alone, and that in recent years he had become dangerous, and would chase women and children."

Lawrence was admitted to the State Hospital as a pauper, and it was not contradicted that Mrs. Andrews had written to the authorities that she was willing to pay his expenses. Lawrence died about four weeks after he reached the hospital.

Thomas A. McCay left a will in which he provided:

"I direct my executors, or such of them as may qualify upon this will and testament, to raise out of my personal property a fund of $3,100 which they are hereby instructed to invest and hold in trust for the use of my brother, Lawrence, during his natural life, and, at his death, to be disposed of in accordance with the provisions of the will of my father, the late C. G. McCay, as to Lawrence's share in his estate."

The widow and daughter of Thomas A. McCay claimed that Thomas A. McCay had performed the conditions of this will of his father, and that they are entitled as his heirs at law to property devised and bequeathed for the support of Lawrence.

The trial Judge held that Thomas had not performed the conditions, in that the will of his father required, as a condition precedent to the investing of the remainder, the personal care of one of the testator's children, and that the care of the daughter-in-law and grandchild do not fulfill the condition. He held that the condition was not fulfilled, since Thomas died before Lawrence. He realized that the case was a hard one, and, while he ordered an accounting, allowed to the estate of Thomas reasonable compensation for the trouble and care bestowed upon Lawrence. It is indeed a hard case if Thomas, who cared for, and it is stated and not denied, kindly cared for, assisted by his mother during her life, and kindly cared for him in his own home for 13 years, and then at his death turned over his trust to his wife and daughter, who carried the burden for some 9 years more, shall be deprived of the pecuniary compensation so justly offered by his father. It is also a hard case if those brothers and sisters and their families, who in all these years had never raised their hands to help their unfortunate brother, shall now come in and get the property. The temptation is that in doing a "great right" we might feel excusable in doing a "little wrong," but we must not forget that hard

cases too often make bad precedent, and thereby great con-
fusion creeps into the law. The law in this case is very
clear, and we have no authority to change it. In *Whitesides
v. Whitesides,* 28 S. C. 331, 5 S. E. 818, we read:

"It will be observed that this is not the case of a devise
to some specified person upon condition in which the ques-
tion whether the condition is precedent or subsequent is
oftentimes difficult to determine; but it is a case of a devise
to an unascertained or uncertain person, where the uncer-
tainty can only be removed by a compliance with the condi-
tion prescribed. So that here the condition is necessarily
precedent. No one of the sons of Thomas Whitesides can
claim under this devise until he has complied with the pre-
scribed condition, for in that way alone has the testator
designated which one of the sons was to take."

The law is clear and inexorable. If Thomas did not "take
kind care of my son, Lawrence, and provide for him until
his death," then neither Thomas nor his estate is entitled to
the remainder.

If the duty of taking care of Lawrence had been com-
mitted by the will to Thomas alone, then there might be
much force in the position that he could not delegate the
duties to any one, but the devise is to a class. A strict con-
struction of the word "children," of course, means the
immediate offspring of the testator. That construction here
would destroy, and was likely to destroy, the whole object
of the provision for this most unfortunate son. Can it be
supposed that the testator intended to send Lawrence adrift
in case of the death of that child who first assumed the duty?
The devise was not to Thomas, but to "whichever of my
children." The purpose manifestly was to provide that the
case of this idiotic and unlovable son should be committed
to a member of the family, and not to strangers. Thomas
turned over his burden to his wife and daughter, who had
learned by long and hard experience to take kindly care of
the unfortunate. There is no question but that the kindly

care was bestowed by them, even when they committed him to the hospital for the insane. It is true that the widow and daughter took an active part in committing him to safe custody, but there was kindly care even then, and his Honor so finds.

Besides this, Thomas provided for kindly care after his own death by setting aside $3,100 of his own money for the maintenance and support of Lawrence, and with kindly care provided that that sum should, at the death of Lawrence, be added to the fund provided for Lawrence, under his father's will, and go to him who gave kindly care to Lawrence. Thomas gave kindly care to Lawrence while he lived, and gave kindly care to Lawrence until he (Lawrence) died. Thomas was a child of C. G. McCay, and gave kindly care to Lawrence until he died, thus literally performed the condition precedent, and the estate of Thomas is entitled to the entire fund provided by C. G. and Thomas McCay. It is claimed that kindly care requires personal service, *i. e.,* that Thomas must dress and wait on Lawrence with his own hands. The will does not say so. The case of *Cabeen v. Gordon,* 1 Hill Eq., p. 56, is relied upon as authority. This case does not sustain the position. The testator gave certain slaves to his daughter, Betsy, "but if my daughter, Mary, shall take care of said Betsy during her life, then at her death I give said slaves to the said Mary." The Court goes on to say, "For one cannot be said to be taken care of, who is waited on with great care, but who is neither fed nor clothed; nor can one be taken care of, who is unable to feed herself, or put on her clothes, by placing before her food and raiment." Mary did not care for Betsy, and was not entitled to the remainder. It is manifest that the personal care provided for was care personal to Betsy, but supplied by Mary. Parents take kindly care of their injured child when they take it to a good hospital and commit it to the ministrations of skilled physicians and competent trained nurses, even though neither of them touch, or are allowed to

touch, the child while it is in a critical condition. The mother may long to do the service herself. Sometimes she is most kindly when she restrains her natural impulse for the good of the child. It is undisputed that Lawrence received kindly care to the day of his death, and that this kindly care was provided by Thomas McCay, and his estate is entitled to the entire remainder.

The judgment is reversed.